Park

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANICE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 09 CV 7686 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| CITY OF CHICAGO HEALTH DEPT., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Plaintiff Janice Johnson ("Johnson") sues Defendant City of Chicago (the "City") for alleged violations of the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Americans with Disability Act ("ADA"), 42 U.S.C. § 12132 et seq., for wrongful termination, failure to accommodate, and retaliation. Before the Court is the City's motion for summary judgment. For the following reasons, the motion is granted.

### I. BACKGROUND

The facts of this case are largely undisputed, in part because Johnson failed to comply with the requirements of United States District Court for the Northern District of Illinois Local Rule 56.1. As discussed below, the Court accepts as true all material facts submitted by the City and not properly contested by Johnson.

**A.  Local Rule 56.1**

"District courts have broad discretion to enforce and require strict compliance with their local rules." Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 655 (7th Cir. 2011) (citing Elustra v. Mineo, 595 F.3d 699, 710 (7th Cir. 2010)). Pursuant to Local Rule 56.1, a litigant

opposing a motion for summary judgment must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). Here, Johnson's submission does not comply with the requirements of the local rule. For example, Johnson denies, or denies in part, nearly half of the City's statement of material facts without any citations to supporting evidence in the record. "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000) (internal quotation marks and citation omitted). Further, Johnson's responses are deficient to the extent that the denials include only a partial or incomplete citation to the record. See Gross v. Town of Cicero, Ill., 619 F.3d 697, 702 (7th Cir. 2010) ("As we have repeated time and again, 'Judges are not like pigs, hunting for truffles buried in [the record].'" (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) (alteration in original)). The Court also notes that Johnson's responses "[s]aying that a document 'speaks for itself' is not a denial under Local Rule 56.1(b)(3)(B)." Henderson v. Bovis Lend Lease, Inc., 848 F. Supp. 2d 847, 849 (N.D. Ill. 2012) (citations omitted). Thus, all material facts submitted by the City and not properly contested by Johnson are deemed admitted.

Johnson also fails to submit a Local Rule 56.1(b)(3)(C) statement of additional material facts that require the denial of summary judgment. The Court therefore ignores the proposed facts that Johnson attempts to incorporate in her response brief to the instant motion. See Cichon v. Exelon Generation Co., 401 F.3d 803, 809-10 (7th Cir. 2005) ("A district court does not abuse its discretion when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1,

the court chooses to ignore and not consider the additional facts that a litigant has proposed." (citing Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316 (7th Cir. 1995)).

**B.   Facts[1]**

Johnson was employed as a Public Health Aide in the City of Chicago's Department of Public Health ("CDPH") from 1998 to 2008. In 2006, Johnson was diagnosed with sickle cell anemia, and notified her employer of her illness. As a Public Health Aide, Johnson monitored and assessed the immunization history of at risk community children by communicating with local medical providers, and making direct contact with residents through telephone calls, mailings, and home visits. Johnson was also required to educate families on communicable diseases during home visits, and worked with Public Aide offices on health and immunization educational presentations. Conducting home visits in the field was an essential part of this job.

The City's Personnel Rules set forth employment policies and procedures for all City employees, including Johnson, a CDPH employee. Under City Personnel Rule 18, a department head is required to initiate discharge action against an employee who is absent without leave for five consecutive work days. CDPH initiates a discharge action by sending a standard letter to the employee's residential address on file to notify the employee of the unapproved absence and to advise the employee to contact CDPH by a certain date with the circumstances regarding the absence or face discharge. If an employee contacts CDPH or comes into work by the given date and explains the absence, the employee will not be terminated for absence without leave. Further, a pre-disciplinary hearing is generally held before any Union employee is disciplined.

---

[1] The Court takes the undisputed facts from the City's Local Rule 56.1 statement, and notes properly disputed facts within the text.

3

During the pre-disciplinary hearing the employee is given information regarding the alleged City Personnel Rule infraction and may respond to the charges. The City, however, is not obligated to meet with the employee prior to taking disciplinary action where the employee is unavailable or refuses to attend the hearing.

Additionally, all CDPH employees are required to provide their current residential address, phone number, and emergency contact information, and to notify the City of any change in address. CDPH employees must also have full medical clearance to return to work after an approved leave of absence. If an employee has any medical restrictions regarding her job duties, CDPH advises that employee to either request a reasonable accommodation under the ADA or request a leave of absence under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

As a member of the American Federation of State, County and Municipal Employees ("Union"), Johnson was also governed by the terms of the collective bargaining agreement between the City and the Union (the "CBA"). Section 12.5(d) of the CBA provides that:

> notwithstanding the provisions of any ordinance or rule to the contrary, seniority or continuous service of an employee is broken, the employment relationship is terminated, and the employee shall have no right to be rehired, if the employee: is absent for five (5) consecutive work days without notifying the employee's authorized Employer representative, unless circumstances preclude the employee or someone in the employee's behalf from giving such notice.

Def. City of Chi.'s Local R. 56.1(a)(3) Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. ¶ 17 (internal quotation marks and citation omitted).

On February 15, 2008, Johnson was issued a ten day suspension for poor job performance for failing to timely submit monthly reports with required documentation, and was insubordinate

4

for failing to attend three scheduled pre-disciplinary hearings on January 31, 2008, February 13, 2008, and February 14, 2008. Johnson was scheduled to return to work on February 29, 2008, but failed to report to work. When Johnson did not return to work following her suspension, her direct supervisor, Priscilla Nkemdi Robinson ("Robinson"), called various emergency contact numbers that the City had on file for her. Robinson spoke to Johnson's sister who stated that she had not been in contact with Johnson. Robinson testified that she did not receive any phone calls from Johnson or anyone on her behalf regarding her absence from February 29, 2008 through March 7, 2008.

On March 7, 2008, Director of the Immunization Program, Maribel Chavez-Torres ("Chavez-Torres"), called 3-1-1 (a non-emergency telephone number) to request a well-being check on Johnson at her last known address. Later that day, Chavez-Torres was informed that Johnson no longer lived at that address. On March 10, 2008, CDPH initiated discharge proceedings against Johnson because she had been absent without leave for five consecutive days. A standard letter, signed by Supervisor of Personnel Administration, Annabel Garcia ("Garcia"), was sent to Johnson's residential address on file with the City. The letter stated that Johnson was absent without leave for five consecutive days, which constituted a break in service under Personnel Rule 18 and Section 12.4 of the CBA and, as such, Johnson's employment was terminated effective March 10, 2008. The letter also stated that:

> if in fact you were not absent, or if you believe the City of Chicago Personnel Rule XVIII or [CBA] Section 12.4 does not apply to you, or if there are circumstances that precluded you or someone acting on your behalf from notifying the Department of your absences from work, you must send a written response to this letter by March 24, 2008.

Def. City of Chi.'s Local R. 56.1(a)(3) Statement of Undisputed Material Facts in Supp. of Its

Mot. for Summ. J. ¶ 38 (internal quotation marks and citation omitted) (alteration in original).

The same day, March 10, 2008, Johnson reported to work. Johnson, with a Union representative present, met with the CDPH supervisory staff, Jim Karagianes ("Karagianes"), Nancy Bracamontes ("Bracamontes"), and Garcia. Karagianes and Bracamontes testified that at the meeting, Johnson was given a copy of the March 10, 2008 letter, and the contents of the letter were explained to her. During the meeting, Johnson told Bracamontes and Karagianes that she was no longer living at the address listed on the March 10, 2008 letter. Johnson provided a new address to CDPH, but refused to sign a change of address form. Johnson also provided an updated telephone number. Additionally, Johnson presented a University of Illinois Medical Center "Consent to Return to Work" form, prepared by a sickle cell physician. The form stated that Johnson was "to refrain from lifting and extreme physical exertion at this time" and "should be committed to desk duty until further notice for medical reasons." Id. ¶ 40 (internal quotation marks and citation omitted). Johnson was informed that she could not be reinstated with the medical restrictions listed therein. Johnson was advised that she could either request a reasonable accommodation under the ADA or request a medical leave of absence under the FMLA, and was provided with both request forms. Johnson was asked if she would like to use vacation or other accrued time to account for her absence while she requested either an accommodation or a medical leave. Johnson stated that she did not want to use her vacation time, and was therefore coded as absent "no pay" status in the City's time records. After this meeting, CDPH did not continue with the termination proceedings.

On March 14, 2008, Johnson, again, with a Union representative present, met with the CDPH supervisory staff. During this meeting, Johnson told Bracamontes and Karagianes that

6

she had recently been hospitalized. Karagianes asked Johnson to provide documentation to CDPH regarding the dates of her hospitalization. Also during this meeting, Johnson submitted a reasonable accommodation request form. The accommodation request stated, *inter alia*, that Johnson had a temporary physical disability, that she would not be able to perform home visits for six to nine months, and requested that she be allowed to work at a desk for that time period.

On March 16, 2008, Johnson submitted a written response addressing her previous absence without leave. The City states that this submission was the last communication it received from Johnson. The City also states that Johnson never provided CDPH with documentation relating to her hospitalization as requested. Johnson disputes this, citing to her "Consent to Return to Work" form, dated February 27, 2008.

On March 17, 2008, the City sent Johnson a letter denying her accommodation request, which included appeal paperwork. The letter detailed the reasons for the denial and advised Johnson that she had the options of returning to work with no medical restrictions or applying for leave under the FMLA. Johnson was also informed that she would be marked as absent without pay until she notified Edward Masa, CDPH Human Resources, what time she would like to use (vacation time, sick time, personal day, or medical leave). Bracamontes testified that she called Johnson at the telephone number provided to CDPH to discuss the City's denial of her accommodation request, but was unable to reach her or leave a message.

Johnson received the denial letter and appeal paperwork on or about March 17, 2008. Johnson, however, did not respond, or contact the City or the Union, because she believed her employment had been terminated on March 10, 2008. Johnson never appealed the denial of her reasonable accommodation request. Johnson repeatedly testified that she did not need an

accommodation to perform the essential duties of her job in February or March of 2008. Specifically, Johnson testified that she could have done her job without using a walker and without an accommodation in March of 2008.

On April 15, 2008, the City sent Johnson another letter advising her, again, that her accommodation request had been denied. The letter stated that Johnson had been coded in a "Sick No-Pay Status" since February 13, 2008. It further advised Johnson that her failure to return to work with a full medical release or to submit completed paperwork requesting a medical leave of absence by April 30, 2008, may result in disciplinary action up to and including discharge. The City did not receive any response or communication from Johnson.

Karagianes prepared documentation seeking Johnson's discharge and submitted it to the City's Department of Human Resources ("DHR") and Law Department. On June 19, 2008, Karagianes received notice from DHR approving initiation of Johnson's discharge, upon approval by the Law Department. On June 30, 2008, the Law Department prepared a Statement of Charges and Explanation of Evidence ("Statement of Charges") considering the discharge of Johnson: (1) for absence without leave from May 1, 2008 to June 30, 2008; and (2) for failing to disclose her current address and/or failing to inform the Department of a change of address from March 10, 2008 to June 30, 2008.

The same day, the City sent Johnson the Statement of Charges and a letter advising her that a pre-disciplinary hearing regarding her proposed discharge was scheduled for July 16, 2008. Johnson testified that she did not receive the June 30, 2008 letter and Statement of Charges. She further testified that she moved to a new address in June 2008, but did not notify the City.

Johnson did not show up to her July 16, 2008, pre-disciplinary hearing or contact the

City. Based on the Statement of Charges, the City terminated Johnson's employment effective August 1, 2008. The City sent Johnson a termination letter, dated July 30, 2008. This letter advised Johnson that she could request a hearing regarding her termination with the Human Resources Board if she submitted a written request within seven days. Johnson testified that she received the July 30, 2008 termination letter. Johnson, however, did not contact anyone at the City or the Union regarding the letter. Nor did she request a hearing with the Human Resources Board.

On February 18, 2009, Johnson filed her Equal Employment Opportunity Commission (EEOC) Charge. In the EEOC charge, Johnson stated, "I have a disability that Respondent was aware of. I requested a reasonable accommodation and was denied. I was discharged from employment on or about August 1, 2008. I believe I have discriminated against because of my disability in violation of the Americans with Disabilities Act of 1990." Def. City of Chi.'s Local R. 56.1(a)(3) Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. ¶ 4 (internal quotation marks and citation omitted).

C.    **Procedural History**

Johnson initiated this action pursuant to the Rehabilitation Act and ADA on December 10, 2009. Johnson filed her Amended Complaint on April 30, 2010, alleging that the City: (1) discriminated against her because of her disability, sickle cell anemia, by denying her accommodation request and terminating her employment; and (2) retaliated against her for making an accommodation request. The City now moves for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Magnus v. St. Mark United Methodist Church, 688 F.3d 331, 336 (7th Cir. 2012). The Court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. Magnus, 688 F.3d at 336 (citing Spivey v. Adaptive Mktg. LLC, 622 F.3d 816, 822 (7th Cir. 2010)). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). Once a party has properly moved for summary judgment, "the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). "To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (alterations in original).

### B. Discrimination

Johnson alleges that the City discriminated against her in violation of the ADA and Rehabilitation Act by failing to grant her request for an accommodation and terminating her because of her disability. Because the alleged violative actions took place in 2008, before the effective date of the 2009 Amendments and because the Amendments are not retroactive, the

Court applies the ADA as it stood before the Amendments. Steffen v. Donahoe, 680 F.3d 738, 744-45 (7th Cir. 2012). "A violation of the ADA or the Rehab Act occurs when a covered entity 'discriminate[s] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" Id. at 743 (quoting 42 U.S.C. § 12112(a)) (alteration in original) (additional citation omitted). As an initial matter, Johnson must show that she "(1) is a qualified individual with a disability and (2) is able to perform the essential functions of the relevant employment position." Kotwica v. Rose Packing Co., 637 F.3d 744, 748 (7th Cir. 2011) (citations omitted).

The City argues that Johnson's claims fail because she presents no evidence of disability as defined by the ADA.[2] The applicable EEOC regulation, interpreting the ADA, defines "disability" as: "(1) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) [a] record of such an impairment; or (3) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2(g) (2007); see also Steffen, 680 F.3d at 743 (citations omitted). Here, Johnson's arguments relate only to her physical impairment.

It is undisputed that Johnson has sickle cell anemia. The existence of a medical condition alone, however, does not prove disability under the ADA. Fleishman v. Cont'l Cas. Co., 698 F.3d 598, 607 (7th Cir. 2012) (citations omitted). Johnson must also demonstrate that her

---

[2] "The Rehabilitation Act provides that the standards of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 et seq., are to be used in determining whether the Rehabilitation Act has been violated in the employment context." Branham v. Snow, 392 F.3d 896, 902 (7th Cir. 2004) (citations omitted).

impairment substantially limits major life activity. Burnett v. LFW Inc., 472 F.3d 471, 484 (7th Cir. 2006). The term "substantially limits" means:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1); see also Steffen, 680 F.3d at 746 (citations omitted).

Johnson's Amended Complaint alleges that she is substantially limited in the major life activities of walking, standing, lifting, bending, and working. Johnson specifically testified that having sickle cell anemia—at times—substantially limited her major life activities of walking and bending.[3] Johnson argues only that her testimony "establishes that her illness impaired her major life activities when she has an episode." Pl.'s Resp. To Mot. For Summ. J. 10 (citing Mot. for Summ. J. Ex. C, at 71, 87). To the contrary, Johnson's testimony is inconsistent and sketchy; and, what little details are supplied are insufficient to show that she was substantially limited in the major life activities of walking and bending, or any other. Johnson testified, for example, that she temporarily used a walker during her sickle cell episode, but also admitted that she could have done her job without using the walker and without an accommodation. Further, Johnson insisted that her limitation was merely temporary. Thus, Johnson's testimony fails to establish that her sickle cell anemia substantially limited her major life activities. See Serednyj v. Beverly

---

[3] Although major life activities can include walking, Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 670 (7th Cir. 2011) (citing 42 U.S.C. § 12102(2)(A)), the Seventh Circuit has expressed doubt that, under pre-2009 Amendment jurisprudence, bending qualifies as a major life activity, Steffen, 680 F.3d at 745 n.5 ("In light of the standard established in Toyota [Motor Mfg., Ky., Inc. v. Williams], however, we do not think that bending is central to one's daily life." (citing 534 U.S. 184, 197 (2002))).

Healthcare, LLC, 656 F.3d 540, 554 (7th Cir. 2011) ("[C]ourts generally find that short-term, temporary restrictions, with little or no long-term impact, are not substantially limiting and do not render a person disabled for purposes of the ADA." (citations omitted)); Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995) ("Under the ADA, '[i]ntermittent, episodic impairments are not disabilities.'" (quoting Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 544 (7th Cir. 1995)) (alteration in original)). Additionally, Johnson fails to present any testimony as to the nature and severity of her impairment, the duration of her impairment, or the long-term impact or permanent limitations, if any, resulting from her impairment. See 29 C.F.R. § 1630.2(j)(2); see also Serednyj, 656 F.3d at 554 ("In determining whether a disability 'substantially limits' a person from performing a major life activity, courts consider 'the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" (quoting Kampmier v. Emeritus Corp., 472 F.3d 930, 937 (7th Cir. 2007))).

Although Johnson fails to argue, or even point out, that the record contains some limited medical evidence regarding Johnson's impairment, the Court, in an abundance of caution, considers the evidence. The physician comments on Johnson's "Consent to Return to Work" form, dated February 27, 2008, state that Johnson was to "refrain from lifting and extreme physical exertion" and that Johnson "should be committed to desk duty until further notice, for medical reasons." Mot. for Summ. J. Ex. P; see also Def. City of Chi.'s Local R. 56.1(a)(3) Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. ¶ 40. In addition, the accommodation request medical questionnaire, dated March 12, 2008, indicates that Johnson had "gait instability," with an anticipated duration of six to nine months. Mot. for Summ. J. Ex. Q;

see also Def. City of Chi.'s Local R. 56.1(a)(3) Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J. ¶ 48. However, the physician determined that Johnson did not have a disability that limits a major life activity. This relatively short-term, temporary impairment, with no long term or permanent impact, is not substantially limiting and does not render Johnson disabled under the ADA. See Serednyj, 656 F.3d at 554 ("Pregnancy is, by its very nature, of limited duration, and any complications which arise from a pregnancy generally dissipate once a woman gives birth."); Mihalko v. Potter, Civil Action No. 00-2076, 2003 WL 23319594, at *10 (W.D. Pa. Dec. 12, 2003) (dismissing disability claim where the record was devoid of evidence that the plaintiff's impairment was permanent or long-term in nature, and noting that the effects of the impairment lasted six months).

In sum, even viewing the record and drawing all reasonable inferences in the light most favorable to Johnson, the evidence is insufficient to show that her major life activities were substantially limited. Because Johnson fails to meet her burden to demonstrate that she was disabled under the ADA, her claims for discrimination and failure to accommodate fail as a matter of law. See Povey v. City of Jeffersonville, Ind., 697 F.3d 619, 624 (7th Cir. 2012) ("Without evidence that Povey is disabled, Povey cannot survive summary judgment on her disparate treatment and failure to accommodate claims under the ADA.").

**C.     Retaliation**

Johnson also alleges that the City retaliated against her for requesting an accommodation. "To establish retaliation under the Rehabilitation Act, an employee must present either direct evidence of discrimination or indirect evidence under the burden-shifting analysis prescribed by McDonnell Douglas [Corp. v. Green, 411 U.S. 792, 802 (1973)]." Anderson v. Donahoe, 699

F.3d 989, 994-95 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, Johnson proceeds only under the direct method of proof.

"Under the direct method of proof, a plaintiff must present evidence of '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" Id. (quoting Caskey v. Colgate-Palmolive Co., 535 F.3d 585, 593 (7th Cir. 2008)). The parties do not dispute that requesting an accommodation is a statutorily protected activity. Nor do they dispute that Johnson's termination constitutes a materially adverse action. However, Johnson attempts to raise a genuine dispute as to her termination. Alternatively, Johnson argues that she establishes a prima facie case for wrongful termination because circumstantial evidence demonstrates a causal connection between her request for an accommodation and her termination.

### *1. Johnson's Termination*

According to Johnson, the City's records implicate three different termination dates: (1) March 10, 2008, as stated in the Termination Notice; (2) July 16, 2008, as stated in the July 18, 2009 email and the July 21, 2009 letter; and (3) August 1, 2008, as stated in the July 30, 2008 letter. As an initial matter, the Court notes that Johnson's proposed additional fact, the alleged July 16, 2008 termination date, is not properly identified and supported in the parties' statement of material facts. Because Johnson failed to submit a Local Rule 56.1(b)(3)(C) statement of additional material facts, the Court ignores the proposed additional July 16, 2008 termination date. See Cichon, 401 F.3d at 809. As such, it does not matter that "evidence may have existed in the record to create a disputed issue of fact." Bordelon v. Chi. Sch. Reform Bd. of Trs., 233 F.3d 524, 529 (7th Cir. 2000).

15

Further, Johnson's claim that she was terminated on March 10, 2008, is disingenuous. Although CDPH initiated discharge proceedings against Johnson for absence without leave on March 10, 2008, the undisputed facts demonstrate that it did not continue with the proceedings. Indeed, Johnson's own conduct belies her contention that she was terminated on March 10, 2008. Johnson reported to work on March 10, 2008, and, with a Union representative present, met with the CDPH supervisory staff. On March 14, 2008, Johnson submitted a reasonable accommodation request form. On March 16, 2008, Johnson submitted a written response addressing her previous absence. Johnson also admits that she received the City's March 17, 2008 letter, denying her accommodation request, which was sent one week after she was purportedly terminated. This letter stated the reasons for the denial and included paperwork and procedures for appealing the denial. It also advised Johnson that she would be marked as absent without pay until she notified Human Resources what accrued time she would like to use. Additionally, it identified her options, which included returning to work with no medical restrictions or applying for leave under the FMLA.

Johnson testified that she did not respond to the March 17, 2008 letter, contact the City or the Union, or appeal the denial of her accommodation request because she believed that her employment had been terminated on March 10, 2008. Whether Johnson thought she had been terminated, however, is irrelevant; the only question is whether Johnson was actually terminated. Moore v. Vital Prods., Inc., 641 F.3d 253, 258 (7th Cir. 2011). Here, Johnson fails to offer any evidence to allow a reasonable jury to find that she was terminated on March 10, 2008.

Specific facts, supported by the record, establish that Johnson was terminated on August 1, 2008. Communication from the City to Johnson continued beyond March 17, 2008, despite

16

Johnson's self-serving denials to the contrary. The City sent a letter on April 15, 2008, advising Johnson, *inter alia*, that her failure to return to work with a full medical release or to submit completed paperwork requesting a medical leave of absence by April 30, 2008 may result in disciplinary action up to and including discharge. On June 30, 2008, the City sent another letter, which included the Statement of Charges, and notified her that a pre-disciplinary hearing regarding her proposed discharge was scheduled for July 16, 2008. While Johnson denies receipt of these two letters, she admits that she received the July 30, 2008 letter, terminating her employment, effective August, 2008. Indeed, Johnson stated in her EEOC charge that she was terminated on August 1, 2008. In light of this evidence, there is no genuine dispute as to Johnson's termination date.

### 2. *Causal Connection*

Johnson relies on a mosaic of circumstantial evidence to support her claim of wrongful termination. Circumstantial evidence "allows the trier of fact to *infer* intentional discrimination by the decision maker, typically through a longer chain of inferences." Anderson, 699 F.3d at 996 (internal quotation marks and citation omitted). The Seventh Circuit recognizes three types of circumstantial evidence under the "convincing mosaic" analysis: "(1) suspicious timing, ambiguous statements (oral or written) and other 'bits and pieces' from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." Id. (citing Coleman v. Donahoe, 667 F.3d 835, 860 (7th Cir. 2012)).

In her attempt to construct a convincing mosaic, Johnson claims that she was terminated on March 10, 2008, as soon as the City was aware that she was planning to make a request for a

reasonable accommodation. Johnson contends that the suspicious timing of the events surrounding her alleged March 10, 2008 termination establishes a prima face case for wrongful termination. As discussed above, however, Johnson's mere belief that she was terminated on March 10, 2008 is wholly unsupported by the record. Rather, Johnson was terminated approximately four and a half months after she requested an accommodation. There was a significant time lapse between the protected activity and the adverse employment action. As such, Johnson cannot establish an inference of causation by way of suspicious timing. See Kidwell v. Eisenhauer, 679 F.3d 957, 967 (7th Cir. 2012) (finding that extended time gaps, such as periods of five weeks and two months, between alleged retaliatory actions and protected activities "militate against" an inference of causation based solely on suspicious timing).

Johnson also claims that other employees without disabilities were late to work and late with monthly reports, but were not terminated. According to Johnson, the City's enforcement of its policy and procedures is inconsistent because she was not notified or provided a hearing regarding late reports and attendance prior to her termination. Johnson claims that this demonstrates "that it was not a real policy but rather another attempt by the City of Chicago to create [an] after-the-fact a basis for its wrongful and unlawful conduct." Pl.'s Resp. To Mot. For Summ. J. 12. This argument fails for several reasons. First, Johnson fails to present any evidence to support this contention. Johnson was not terminated because of her late reports and attendance; rather, she was terminated for absence without leave from May 1, 2008 to June 30, 2008, and for failing to disclose her current address and/or failing to inform the Department of a change of address from March 10, 2008 to June 30, 2008. Johnson provides no evidence that similarly situated employees were treated differently. Nor does Johnson identify any specific

18

evidence that indicates that the City acted pretextually.

Finally, although "[a]n employer's 'systematic abandonment of its hiring policies is circumstantial evidence' of a retaliatory motive," an employer need not "rigidly adhere to procedural guidelines in order to avoid an inference of retaliation." Kidwell, 679 F.3d at 969 (quoting Rudin v. Lincoln Land Comty. Coll., 420 F.3d 712, 723 (7th Cir. 2005) (additional citation omitted)). Courts "look for pretext in the form of 'a dishonest explanation, a lie rather than an oddity or an error.'" Id. (quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 685 (7th Cir. 2000)). Further, "when independent surrounding circumstances indicate that the employee's performance was seriously deficient and worthy of disciplinary action, a procedural abnormality will not suffice to establish a retaliatory motive." Id.

The City's Personnel Rules set forth employment policies and procedures for all City employees. Specifically, when an employee is absent for five consecutive work days without leave, CDPH initiates a discharge action against the employee by sending a standard letter to the employee's residential address on file to: (1) notify the employee of the unapproved absence; and (2) advise the employee to contact the CDPH by a certain date with the circumstances regarding the absence or face discharge. If an employee contacts the CDPH or comes into work by the given date and explains the absence, the employee will not be terminated for absence without leave. Additionally, a pre-disciplinary hearing is generally held before any Union employee is issued discipline. During the pre-disciplinary hearing the employee is given information regarding the alleged City Personnel Rule infraction and may respond to the charges. The City, however, is not obligated to meet with the employee prior to taking disciplinary action where the employee is unavailable or refuses to attend the hearing. Here, Johnson cannot show that the

19

City deviated from its established policies and procedures when it terminated her. Moreover, Johnson cannot demonstrate a retaliatory motive when the circumstances show that her actions were deficient and worthy of disciplinary action. There is simply no circumstantial evidence in this case to allow the trier of fact to infer intentional discrimination. Accordingly, Johnson fails to establish a prima facie case of retaliation.

### III. CONCLUSION

For the foregoing reasons, the City's motion is granted. Johnson fails to meet her burden to demonstrate that she was disabled under the ADA and that her request for accommodation was at least a motivating factor in the City's adverse employment action against her. The Court enters summary judgment in favor of the City.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: January 4, 2013